By the Court.
Hoffmak, J.
—It is unnecessary to inquire whether the mortgage to James Brown and others is valid or not, as between the mortgagees and the other parties in this action. When the receiver was appointed he became entitled to the possession of the buffet in question, either subject to the claim upon the mortgage or discharged from its lien. He would take the property and its proceeds for the benefit of the mortgagee, if it was valid, or for the benefit of those next entitled, if they could set it aside. His title was not in either aspect varied.
The plaintiff was appointed receiver on the 5th of August, 1856, by an order made in the action brought by The Sun Mutual Insurance Company, under proceedings upon their judgment of the 31st of July, 1856. This was ten months before the execution on the judgment in favor of Woods was issued. That order divested the title and interest in the property from the judgment debtor, and vested it in the receiver. (Porter v. Williams, 5 Seld., 142; Edmonston v. McLoud, 16 N. Y. R., 544.) An assignment also is stated to have been executed.
When then the levy was made, no legal right remained in the judgment debtor. He had no property which could be seized. It was in another by operation of law. It was in the custody of the law, and of the Court appointing the receiver. And this fact became known to the execution creditor, the defendant, before the sale, although after the levy.
This might appear necessarily to determine the case in favor of the plaintiff; but yet there is one circumstance to be regarded. *557 The receiver, appointed in August, 1856, neglected to take possession ; left the debtor in uninterrupted control, and in June, 1857, the execution creditor so finds it.
I think, however, that the rule which prevails as to executions, supplies an analogy to govern this case. I understand that rule to be, that if a sheriff neglect to complete a levy by a sale, with merely the acquiescence, but no positive act of interference of the first execution creditor, the right of the latter will not be superseded by a subsequent execution. (Herkimer County Bank v. Brown, 6 Hill, 232; Knower v. Barnard, 5 Hill, 377.) In Cosher v. Peterson, cited, (7 Halsted, 291,) Oh. J. Kirkpatrick states the law thus: “ If the execution should not be pursued, and a subsequent one be levied on the same property, then it will always be a question whether the first was kept up merely by color, and for fraudulent purposes.” (1 South., 317.)
Upon this principle, the legal title of the plaintiff, prior in date, ought I think to prevail. Whether the assent of the persons to his appointment, gives them any rights as judgment and execution creditors, need not now be inquired into.
The receiver will hold the money for those who may be entitled to it, and cannot pay it away without an order of court made when the rights of the parties are determined.
Judgment should be ordered for the plaintiff, for the value of the property, with interest from the time of the sale.
Woodruff, J.
—It is not material in this case to inquire whether as between James Brown and others and the plaintiff, the mortgage to the former is a valid security or ceased to be valid as against the other judgment creditors by reason of the omission to refile (as to which see 4 Kern., 71.) The validity or invalidity of that mortgage cannot determine the rights of the parties to this suit as between themselves.
If the mortgage to Brown and others is invalid, it is alike invalid as to each of the parties to this action, and their rights must be determined by their relations to the subject, just as they would be if no such mortgage had existed.
If that mortgage is' valid as to either of these parties, it is so as:, to both, and' as 'before, their rights, between themselves, depend upon other questions.
*558 Whether the mortgage was valid or invalid, the plaintiff when he was appointed receiver became entitled to the possession of the buffet in question. His right to the buffet was subject to the claim of Brown and others as mortgagees only. If the lien of the mortgage had ceased as to him, then his title to the property was absolute. If such lien had not then ceased, then he acquired a right of possession and a right to redeem the property, or in other words, he had a title to the property, subject to the mortgage.
As between the plaintiff and the defendant, the plaintiff’s right and title was, at the time of his appointment, prior in time and in equity to the right of the defendant to seize the property on an execution subsequently issued.
The judgment in favor of the Sun Mutual Insurance Company, was recorded and docketed (January 15, 1856,) before the judgment in favor of the plaintiff (February 1, 1856). Pro: ceedings supplementary to execution were had at the instance of the insurance company. Dwight was enjoined against disposing of his property, and the plaintiff was appointed receiver, and in obedience to the order then made, Dwight executed an assignment to the plaintiff as such receiver, and all this was done in July and August, 1856, ten months before the issuing of the execution on the defendant’s judgment, on which the property was taken.
By instituting supplementary proceedings, in the nature of a creditor’s bill, the judgment creditors by whom they were instituted, and the receiver on their behalf acquire a preference over other creditors in respect to any property discovered, subject only to prior liens, which may have been acquired by prior proceedings of the same nature..
As between these parties therefore, the remaining question is, whether the receiver’s title was lost, or is to be held invalid as against the defendant, because the receiver had not taken actual possession of' the buffet before the defendant’s execution was levied thereon ? For as between these parties the question whether the plaintiff will be ultimately directed to apply the funds in his hands, in the first instance to the payment of the judgment of Brown and others, (which was the first judgment recovered against Dwight) or not, does not arise. Brown and *559 others instituted the first proceeding supplementary to execution; that proceeding is still pending. The Court or Judge would not appoint two receivers of the same property. And presumptively the ultimate appropriation of the property in the receiver’s hands will be among creditors, instituting such proceedings, in the order of priority, corresponding with the times when those proceedings were respectively commenced.
To recur then to the remaining question above stated.
There is no pretense of any actual fraud or collusion. There is no evidence that the delay of the receiver in taking possession was by the consent or direction or even with the assent of the creditors at whose instance he was appointed. Under such circumstances the judgment creditors ought not to be prejudiced by that delay. The receiver is the officer of the Court and acts under its direction, or that of the Judge by whom the appointment was made. To the creditors on whose behalf he acts, his relation is similar to that of a sheriff; as to whom see the cases 5 Hill, 377; 6 id., 232.
At the time the defendant’s execution was levied and the property was sold, there was no legal title in Dwight the judgment debtor. When the property was sold, the defendant had actual knowledge of the plaintiff’s title as receiver.
No rule of law and no equities between the parties warranted the defendant in proceeding to sell the property in disregard of the plaintiff’s title, for there is no proof of any bad faith or that the plaintiff’s title was sought to be used as a protection to Dwight or to hinder or delay his creditors.
The plaintiff should have judgment for the value of the property with interest from the time of the sale.